# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARLA SERITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case. No. 11-cv-496-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Marla Seritt seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416 (i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 11).

Plaintiff filed her application for disability insurance and SSI benefits on March 13, 2008, claiming an onset date of December 22, 2007. (R. 140, 146). The Administrative Law Judge ("ALJ"), Jeffrey S. Wolfe, conducted a hearing on August 24, 2009. (R. 25). On December 22, 2009, the ALJ entered an order denying benefits. (R. 20). Following entry of his decision denying benefits, the Appeals Council denied plaintiff's request for review on June 23, 2011. (R.1-5). The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On August 11, 2011, plaintiff filed the subject action with this Court. (Dkt. # 2).

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence supports the decision of the ALJ and whether the applicable legal standards were correctly applied. See <u>Briggs ex. rel. Briggs v. Massanari</u>, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. <u>Casias v. Secretary of Health & Human Service</u>, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the relevant adjudicated period. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C. § 423 (d)(3), and 20 C.F.R. §§ 404.1513, 416.913.

Plaintiff raises two issues on appeal:

(1) Whether the ALJ failed to fully develop the record; and

(2) Whether the ALJ failed to properly consider plaintiff's credibility.

(Dkt. # 25 at 4).

## Background

Plaintiff was born on November 21, 1955. (R. 140). She was 52 years old on her alleged onset date of disability, and 53 years old at the time of her hearing before the ALJ. (R. 25, 140). Plaintiff has a high school education. (R. 203). Plaintiff has been married and divorced twice. (R. 140-41). At the time of her hearing before the ALJ, her son and his family were living with her. (R. 32). She occasionally babysits her son's two children. (R. 33-34). Her work history consists of a sales representative, housecleaner, kitchen helper/dishwasher, telephone sales agent, closet organizer, dispatcher, concession stand worker, car sales person, home health aide, and waitress. (R. 18).

Plaintiff's longest work situation lasted from 1985 to 2001, during which she worked for Diversa Graphics in Tulsa as a sales representative. (R. 51). She quit because she began experiencing depression and thought it was tied to the job. (R. 52). She then worked in the same position for three separate companies for two to threes months each, but she was fired from each for lack of performance. (R. 49-51). Plaintiff then worked as a dispatcher at Elston Nationwide Trucking in Bedford, Texas for approximately two years until she was fired due to staffing issues. (R. 49). She also sold t-shirts at a motor speedway for a weekend while in Texas. (R. 53). Plaintiff worked at a Nissan Dealership in Texas selling cars for 30 days, until she was evicted from her apartment and moved back to Oklahoma in the fall of 2007. (R. 48).

After returning to Oklahoma plaintiff worked as a dispatcher for Hopkins Transports for 22 days in December 2007, near the time of her alleged onset date of December 22, 2007. (R. 47-48, 180). After the alleged onset date, plaintiff worked as a home health aide, but quit after two

3

weeks because of the distance from her home. (R. 46). She worked for a weekend as a kitchen helper at a civic center. Id. During the summer of 2008, she cleaned and organized houses under the name of her own company, Hands on Organizing. (R. 37). She worked as a sales agent for Preferred Solutions Group for 30 days before being fired. (R. 44-45). She worked performing data entry for Express Employment Professionals, but was terminated after only two hours for being too slow. (R. 44). She worked as a waitress at a Mexicali restaurant for one week. (R. 72, 191). She worked labeling fabric at Worldstaff Worldwide from October to December in 2008. (R. 166-67). Plaintiff's most recent job prior to the hearing before the ALJ was cleaning a house in Claremore, Oklahoma during the first three months of 2009. (R. 35).

Following her application for benefits, plaintiff began receiving medical treatment at Associated Centers for Therapy in April 2008. (R. 277). She claimed to have Bipolar Disorder and began an Abilify prescription. (R. 282). She saw improvements with her depressive symptoms, irritability, and concentration during her treatment but still maintained complaints in those areas at the end of her treatment period in July 2008. (R. 277-81). Plaintiff underwent a mental status exam with Dennis A. Rawlings, Ph.D. on July 7, 2008. (R. 270). She offered a variety of complaints, including depression, anxiety, mood swings, hallucinations and delusions, concentration problems, memory problems, and anger problems. (R. 271). Dr. Rawlings found that plaintiff looked to be in a trance often, but her orientation was intact. (R. 274). Her recall and recent memory were intact, as was her mental control. Id. Her attention span and concentration were both intact. Id. Dr. Rawlings found her social functioning to be limited by anxiety, OCD, depression, mood swings with paranoia and chronic pain. Id.

Cynthia Kampschaefer, Psy.D. performed a Mental Residual Functional Capacity Assessment on July 31, 2008, based on the medical evidence. (R. 283-99). She found plaintiff to

4

have a moderate degree of limitation with activities of daily living and maintaining social functioning. (R. 293). She listed a mild degree of limitation with maintaining concentration, persistence, or pace, and found no episodes of decompensation. Id. The only specific area in which she found plaintiff to be markedly limited was the ability to act appropriately with the general public. (R. 298).

Plaintiff received treatment from Family and Children Services from August 2008 through August 2009. She complained of depression and anxiety, sadness, helplessness, loss of interest, isolation, excessive sleep, lack of appetite, pacing, constant worry and nervousness, major mood swings, and racing thoughts. (R. 307). She found that the Abilify helped, but she experienced negative side effects, including severe muscle cramps. (R. 316). Her progress notes indicate she was consistently alert and oriented, well groomed, cooperative, and her attention and concentration were adequate. (R. 315-18, 335-37). Plaintiff continued to receive an Adderall prescription from her long-time physician, Kris Armstrong, M.D., during this time. (R. 258-67, 324-33).

Plaintiff's Social Security disability exam was conducted on September 15, 2009 by Larry Vaught, Ph.D. (R. 347). She reported symptoms of frequent sadness, negative view of the future, anhedonia, difficulty with decision making, withdrawal, irritability, loss of libido, sleep difficulties, fatigue, suicidal thoughts, manic episodes, panic, restlessness, fear, sweating and increased heart rate. Id. Plaintiff obtained a WAIS-III Full Scale I.Q. of 98, which is in the average range. (R. 351). She obtained Working Memory Indices of 90 and 88 on the WAIS-III and WMS-III, respectively. Id. She obtained a Processing Speed Index of 91 (27th percentile), and could repeat seven digits forward and five digits backward. (R. 349, 351). Dr. Vaught also filled out a separate Medical Source Statement in which he found plaintiff to be moderately

limited in her ability to understand and remember complex instructions, to carry our complex instructions, to interact appropriately with supervisors or co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. (R. 353-54). Her only marked limitation was with her ability to interact appropriately with the general public. (R. 354).

On October 5, 2009, vocational expert Bonnie Ward responded to interrogatories regarding plaintiff's vocational limitations and occupational capabilities. (R. 243-48). She opined that plaintiff is restricted to unskilled work, and restricted to no public contact. (R. 246). She noted that plaintiff's skills from past relevant work will not transfer because of the restriction to unskilled work. (R. 248). Ms. Ward responded that there are occupations plaintiff could perform, including hand packer, bench assembler, electrical assembler, and card assembler. (R. 247).

## Decision of the ALJ

The ALJ found that plaintiff has not engaged in substantial gainful activity since December 22, 2007, the alleged onset date. (R. 13). She did work after the alleged onset date, but this work was an unsuccessful attempt. Id. Plaintiff's severe impairments were determined to be Mood Disorder, NOS, Attention Deficit Hyperactivity Disorder, and Histrionic Personality Disorder with Narcissistic and Obsessive Compulsive Traits. Id. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, specifically listing 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.08 (personality disorders). (R. 14). He determined plaintiff has moderate restrictions in her daily living activities and social functioning, mild restrictions with concentration, persistence and pace, with no episodes of decompensation. (R. 15).

The ALJ found plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with some nonexertional limitations. He determined plaintiff to have a marked limitation on her ability to interact appropriately with the general public. (R. 16). He found she can understand, remember, and carry out simple and some complex tasks. Id. She can relate to others on a superficial level regarding work matters, and can adapt to work settings and work a normal day and week. Id.

The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence and limiting effects of her symptoms to the extent they are inconsistent with his RFC assessment. (R. 17). The ALJ found that plaintiff can not perform her past work as a sales representative, housecleaner, kitchen helper/dishwasher, telephone sales agent, closet organizer, dispatcher, concession stand worker, car sales person, home health aide, and waitress, because of her marked limitation on interaction with the public and her restriction to only unskilled work. (R. 18). Based on the testimony of the vocational expert, the ALJ found she is capable of unskilled work at all exertional levels, such as, hand packer, bench assembler, electrical assembler, and card assembler, and that these jobs exist in sufficient numbers in the regional and national economy to preclude disability. (R. 19). The ALJ concluded that although plaintiff suffered from multiple impairments, she could perform the above-mentioned unskilled work. This finding was made at step five in the sequential evaluation outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

### Discussion

**Development of the Record**

As her first issue of error, plaintiff claims the ALJ failed to fully develop the record. (Dkt. # 25 at 4). She alleges error because the form given to Dr. Vaught did not ask for his opinion regarding concentration, persistence or pace, and her request for a supplemental opinion from Dr. Vaught regarding those issues was refused by the ALJ. (Dkt. # 25 at 5-6). Plaintiff argues that the ALJ's adoption of the jobs which plaintiff can perform, given by the vocational expert, was flawed because the only medical opinion the vocational expert received was Dr. Vaught's. (Dkt. # 25 at 6).

In a social security disability case, the claimant bears the burden of proving her disability. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Id. at 1167. Only when that burden is met does the duty shift to the ALJ to order a consultative examination if necessary to resolve the issue of impairment. Id. A consultative examination is often employed when there is direct conflict in the medical evidence, or when the evidence in the record is inconclusive. Id. at 1166. The ALJ has broad latitude in deciding to order such an examination. Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990).

Here, where plaintiff claims the ALJ should have requested that Dr. Vaught supplement his opinion with greater detail regarding concentration issues, that claim is valid only if the record suggests a reasonable possibility her concentration issues are severe. The objective medical evidence in the record, however, suggests no severe impairment regarding concentration and focus. Drs. Rawlings and Kampschaefer both made determinations relating to plaintiff's

concentration prior to Dr. Vaught's exam. Dr. Rawlings noted that plaintiff's "attention span was intact," and "her tests of concentration were intact." (R. 274). Dr. Kampschaefer found plaintiff to have only a mild degree of limitation in maintaining concentration, persistence, or pace. (R. 293). Dr. Vaught did not specifically address plaintiff's concentration on the "Medical Source" form he was provided, but did mention that area in his examination report. (R. 347-55). He noted that plaintiff could "repeat seven digits forward and five digits backward," and that she obtained a Processing Speed index of 91 (27th percentile). (R. 349, 351).

The ALJ did reference plaintiff's objection to Dr. Vaught's opinion, but determined that Dr. Vaught not responding as plaintiff would like does not discount his opinion. (R. 18). The ALJ's more prevalent concern with issues other than concentration in Dr. Vaught's exam was reasonable in light of the medical evidence already in the record. Dr. Vaught's examination primarily helped resolve issues with plaintiff's ability to interact with the public, which was previously noted as a more serious issue in Dr. Kampschaefer's assessment. (R. 298-99, 354). Had the record been void of medical evidence establishing plaintiff's limitations, or lack thereof, in the area of concentration, it would have been error for the ALJ to dismiss plaintiff's concerns with Dr. Vaught's opinion. The record did, however, contain objective medical evidence relevant to plaintiff's concentration, and this evidence was sufficient to make a determination. Thus, the ALJ adequately developed the record relevant to the issues raised.

**Credibility**

As her second issue of error, plaintiff claims the ALJ failed to perform a proper credibility analysis. (Dkt. # 25 at 6). Credibility determinations made by an ALJ are generally binding upon review, Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990), and will not be upset when supported by substantial evidence. Diaz v. Sec'y of Health & Human Servs., 898

F.2d 774, 777 (10th Cir.1990). In this regard, the ALJ's credibility analysis must be affirmatively linked to the evidence and not just a conclusion in guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted).

The ALJ determined that Dr. Vaught's study showed plaintiff to be "far less impaired and limited than she alleges." Id. He found that Dr. Vaught giving plaintiff only one "marked" limitation failed to match up with her perception that she is mentally and emotionally incompetent to hold a job. Id. The ALJ further noted that plaintiff's testimony suggested she has "settled into a pattern of frustration and failure that is uncalled for in someone with her actual capacities." (R. 18).

The ALJ primarily relied on the opinions of Dr. Vaught and Dr. Rawlings. The ALJ noted that Dr. Vaught's study found plaintiff to have a "marked" limitation only in dealings with the public. (R. 17). The ALJ also cited Dr. Kampschaefer's assessment as support for his RFC assessment. (R. 18). Dr. Vaught's finding is consistent with Dr. Kampschaefer's finding that plaintiff was "markedly limited" only in her ability to interact with the general public. (R. 297-99). The ALJ also noted that no source of consultation or treatment has opined that plaintiff is unable to perform any and all work because of her psychological impairments. (R. 18). The Tenth Circuit has affirmed decisions in which an ALJ's credibility finding was based in part on the fact that no treating physician had placed restrictions on the claimant. See, e.g., Boswell v. Astrue,, 450 Fed. Appx. 776, 778 (10th Cir. 2011) (unpublished); Holden v. Astrue, 274 Fed. Appx. 675, 686 (10th Cir. 2008) (unpublished).

More specifically, plaintiff contends that the ALJ improperly determined the RFC assessment prior to making his credibility evaluation. (Dkt. # 25 at 7). Plaintiff bases this contention on the ALJ's finding that plaintiff's statements were "not credible to the extent that

10

they are inconsistent with the above residual functional capacity assessment." (R. 17). The argument might have merit if the Court were to judge the ALJ's statement standing alone, but in the context of his reasoning as a whole it is clear he made credibility findings in the course of the RFC assessment. "The ALJ's credibility and RFC determinations are inherently intertwined." Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009). The ALJ's statement immediately follows his discussion of the examinations performed by Dr. Rawlings and Dr. Vaught, and precedes further discussion of the RFC assessment. (R. 17-18). The Tenth Circuit has held that where "we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." Keyes-Zachary v. Astrue, No. 11-5152, 2012 WL 4076114, at *6 (10th Cir. Sept. 18, 2012). The context of the ALJ's reasoning indicates that he found plaintiff's statements lacking in credibility in the areas in which those statements were inconsistent with the mental testing results, which the ALJ concurrently used for the RFC assessment.

Plaintiff also argues that the ALJ ignored her problems with concentration, focusing and completing tasks. (Dkt. # 25 at 7). The ALJ did, however, note that plaintiff "exhibited an intact concentration and attention span" in his discussion of Dr. Rawlings' mental testing. (R. 17). He also previously mentioned in the decision that plaintiff has only mild difficulties regarding her concentration, persistence or pace. (R. 15). The limited focus given to this area in the ALJ's decision can be attributed to Dr. Rawlings' report finding no problems with plaintiff's concentration, as well as Dr. Kampschaefer's assessment determining that plaintiff's limitations with sustained concentration and persistence are mild at best. (R. 17, 297-98). Credibility encompasses more than just claims regarding a particular limitation. The ALJ's finding of inconsistencies between plaintiff's statements and the medical evidence include the full range of

11

psychological impairments for which plaintiff was tested. The ALJ is not required to perform "a formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's credibility findings are supported by substantial evidence.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 30th day of October, 2012.

_____
T. Lane Wilson
United States Magistrate Judge